In the Matter of the Transfer Tax upon the Estate of SIMON GOLDENBERG, Deceased.

HERMAN GOLDENBERG, as Trustee, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

First Department, May 2, 1919.

Tax — transfer tax — taxation of vested remainders at time of death of testator — provision of statute exempting estate less than $10,000 applies to entire estate and not to individual legacies — res judicata — when order of surrogate confirming report of appraiser not res judicata as to the vesting of remainders — erroneous direction to executor to pay transfer tax where estate administered by trustee — correction of error by Appellate Division.

Where a testator died in 1897 leaving his property in trust to his wife during her life, with specific legacies to his four sisters who survived him, if his wife should not survive, or if she should survive then upon her death, the legacies to the sisters vested immediately upon the death of the testator subject only to the intervening life estate of the widow and were taxable at the time of the death of the testator upon their value as of that date.

An order of the surrogate merely affirming a report of an appraiser fixing the value of the estate of the testator and the amount of the tax imposed on certain other legacies at that time, the appraiser stating that he was unable to tax the legacies to the sisters, and proceeding on the theory that the estate was contingent, is not *res judicata* as to the title to the legacies.

The only matters that are *res judicata* are those embodied in an order or judgment.

The provision of the Tax Law that an estate less than $10,000 shall not be taxed applies to the entire estate left by the testator and not to the individual shares bequeathed to the various legatees.

An order of the surrogate directing the executor to pay a transfer tax, although the estate is being administered by a trustee, may be corrected by the Appellate Division on appeal.

Where a will directs a transfer tax to be paid out of the estate by the executor or trustee, it is not necessary to apportion said tax among the legatees.

The value of the remainders having been correctly appraised as of the time of the death of the testator and the value of the legacies to the sisters at that time being clearly ascertainable, it is merely necessary to fix the tax thereon at the rate of one per cent after deducting the value of the realty which was not taxable under the statute in effect at that time, and then fix a tax at the rate of five per cent on the balance, real and personal, payable to the other legatees.

APPEAL by Herman Goldenberg, as trustee, from an order of the Surrogate's Court of the county of New York, entered

in the office of said Surrogate's Court on the 18th day of October, 1918, affirming a prior order fixing and assessing a tax upon the transfers of the property of the deceased.

*John J. Crawford* of counsel [*Brush & Crawford,* attorneys], for the appellant.

*William W. Wingate,* for the respondent.

SHEARN, J.:

The decedent died February 19, 1897, leaving a will which, after providing for numerous specific legacies, directed that in case his wife should survive him, his executors and trustees, to whom he gave his property in trust, should collect the rents, income and profits therefrom and pay the same over to his wife during her life. It then provided as follows:

" *Twenty-third.* If my wife shall not survive me, then upon my death, or, if she shall survive me, then upon her death, I order and direct my executors and trustees hereinafter named, the survivors or survivor of them, to sell as conveniently may be, all my property, both real and personal, at public or private sales, at such times, upon such terms and in such manner as they in their discretion shall deem for the best interest of my estate, and to give good and sufficient deeds and conveyances of all my real estate, and to dispose of the same in manner following:

" 1. I give and bequeath to my sister, Hannah Marcus, the sum of Thirty Thousand Dollars."

(Subdivisions 2, 3, 4 and 5 are not material.)

" 6. I give and bequeath to my sister, Zipora Cross, of Boston, Massachusetts, the sum of Twenty-five thousand dollars, and if she shall not survive me, then I give and bequeath the said sum to her issue, if she leave any her surviving."

Subdivisions 7 and 8 make precisely the same provision for the decedent's sisters Emelia Strauss and Henrietta Strauss. The remaining seven subdivisions of this paragraph, like 2, 3, 4 and 5, are legacies payable to various parties, and are not material to the question here raised.

Upon the death of the decedent, transfer tax proceedings were had, upon notice to all parties. The four sisters of the

decedent were then alive. The result of that proceeding was embodied in the appraiser's report, wherein he set forth that the value of the real estate was $320,950 (net value), of which the present value of the life estate of the decedent's widow, who survived him, was $148,953, and the value of the remainder interest, $163,810, was not then taxable, it being not then ascertainable to whom it would finally pass. The net value of the personal property, after deducting the specific legacies, was found by the report to be $107,294.04, in which the value of the widow was found to be $49,795, and the value of the remainder $54,762, which was not taxed for the same reason, except as to the value of the widow's interest.

The widow died in August, 1917, and on petition of the State Comptroller, the matter was again referred to an appraiser to fix the tax, the life estate having been extinguished. This appraiser reported the value of the estate to be $218,572, which is the combined value of the real and personal property, after deducting the widow's life estate, as found by the first appraiser, and also reported that there were no exemptions and that it was taxable at the rate of five per cent and the order assessed the tax against the executors.

The main ground of this appeal is that the property passed to the sisters of the decedent, and that, therefore, it was subject only to a one per cent tax.

From an examination of the will, it appears that the legacies given to the sisters vested immediately upon the death of the testator. There are no words importing a future gift, the only contingency mentioned being that of their surviving the testator. All of the sisters did survive the testator and the estate immediately thereupon became vested in them, subject only to the intervening life estate of the widow. The children of the sisters did not take by virtue of the will of the decedent, but by inheritance from their mothers. The case of *Matter of Dows* (167 N. Y. 227), which was decided under the same statute in force at the time of the death of the decedent herein, is an authority for the proposition that the remainder was taxable at the time of the death of the decedent, and that the tax should be imposed upon the remainders that vested at that time, and distinguishes the cases of *Matter of Hoffman* (143 N. Y. 327) and *Matter of Roosevelt* (Id. 120). These last-

mentioned cases, like others relied upon by the Comptroller herein, are ones in which the wills themselves provide that the remainders are to go to persons standing in varying degrees of relationship to the decedent, depending upon contingencies named in the will. In the case at bar the will provides for but one contingency, determinable upon the death of the testator, and hence ascertainable at the time of the first taxation proceeding. The testator has, by his will, *given* to his sisters certain sums, the enjoyment whereof is merely postponed until the death of his wife. Therefore, under *Matter of Dows* (see p. 232) these remainders were taxable at the time of the death of the testator.

It is to be noted that the Comptroller places considerable reliance on the case of *Matter of Davis* (149 N. Y. 539), in which case the court held that the tax was not to be fixed until it was ascertained to whom the estate would finally pass. That case is readily distinguishable for the reason that the estate was left to decedent's sister for life, and upon her death to such of her children as were living at the time of the sister's death. The court held that a tax against the share of one of such children could not be ascertained or fixed until the death of the life tenant, as there was only a technical vesting, which was liable to be divested by the death of such child during the life of the mother. Such is not the case here. The will of the decedent provided for only one contingency, viz., that his sisters outlive him, which was fixed at the time of his death and hence at the time of the first appraisal.

It is claimed that the report of the appraiser, having been affirmed by the surrogate and no appeal having been taken, is *res judicata*, and hence his finding that the estates of the sisters were contingent cannot be reviewed. The order of the surrogate merely affirmed the value of the estate of the decedent and the amount of the tax imposed on certain legacies taxed at that time. The appraiser did not pass upon the title to the legacies given to the sisters. He merely stated that he was unable to do so. He postponed the appraisal of the legacies until it should be determined who was entitled thereto, although, according to the plain facts in the case, that result could have been determined then. The order of the surrogate provides as follows: " Ordered and

adjudged that the cash value of the property referred to in said report, the transfer of which is subject to the tax imposed by the act relating to taxable transfers, and the tax to which the said transfers are liable, is as follows." The order does not confirm the report of the appraiser. It does not appear from the record that there was any controversy raised as to the title to the legacies. It is true that the appraiser evidently proceeded on the theory that the estate was contingent, or he would have taxed it as required by the law then in effect, but the *reason* stated by him in the report for not taxing the sisters' shares cannot be deemed to be *res judicata*, as such reason or conclusion was never embodied in any decree or order from which the sisters could appeal. The fact that the order is silent as to such interest or estate of the sisters does not bar their successors from now raising the question, for the only matters that are *res judicata* are those embodied in an order or judgment, and not those omitted therefrom.

*Matter of Chappell* (83 Misc. Rep. 673) is not an authority to the contrary. In that case it appears from the opinion that the main issue was whether the estate was contingent or vested. It was held that it was contingent, and when a subsequent proceeding was had to fix the tax, the contingency having been determined, the Comptroller claimed that the amount of the estate fixed in the first proceeding was *res judicata*. The surrogate held that as the only question litigated there was the question of vesting, the valuation was not *res judicata*, where the appraiser had admittedly made an error in appraising the value of the estate. The converse of this should apply to this case, *i. e.*, where the only question litigated was that of valuation, the assumption of the appraiser, clearly erroneous, that the estate did not vest in the sisters, is not binding.

It does not appear from the original report of the appraiser that the question of vesting or not vesting was ever raised. The only mention made is his statement that the " remainder interest * * * is not taxable at the present time, it being not now ascertainable to whom it will finally pass." There was nothing in this statement to preclude the sisters from claiming that the estate did vest upon the death of the

testator, that question not being in issue, and the finding of the appraiser to that effect being, so far as the record shows, purely gratuitous. This finding was not approved of in the order, and, therefore, there was nothing from which the sisters could appeal.

In *Matter of Lawrence* (96 App. Div. 29), cited and quoted from by the Comptroller, it appears that the first appraiser reported that the value of the annuities could not be determined, as they were liable to change. Thereafter another appraiser was appointed who fixed a tax of one per cent on the life beneficiaries, there having been no change in the estate. This court held that the report of the first appraiser, having been affirmed by the surrogate, and no appeal taken therefrom, was *res judicata*. But it appeared in that case that the order held by that decision to be *res judicata* read as follows: " Ordered, that the said report be and the same hereby is in all respects confirmed and it is further ordered that there is no interest passing by the will of the above named testator subject to taxation at this time." (App. Div. Cases, 1904, vol. 1058, case No. 6497.) It will readily be seen that such an order would be an adjudication of the question as to whether the estate was presently taxable or not. Comparing it with the order in the case at bar, it is clearly no authority for the proposition advanced by the Comptroller.

In my opinion the only tax that can be imposed on this remainder is one per cent on the personalty, inasmuch as the law in effect at the time of the testator's death, under which the tax should have been imposed, did not tax realty. The claim that there should be no tax whatever because the value of the estates passing to the sisters did not exceed $10,000 each (exclusive of the realty) cannot be upheld, for the provision that an estate less than $10,000 should not be taxed applies to the entire estate left by the decedent, and not to the individual shares bequeathed to the various legatees. This was so held in *Matter of Hoffman* (143 N. Y. 327), which decision was rendered under chapter 399 of the Laws of 1892, which was substantially the same as the re-enactment of the Tax Law of 1896 (Gen. Laws, chap. 24 [Laws of 1896, chap. 908], art. 10).

The claim that a further deduction should be made at

this time for the value of the life estates of Bettchen and Rosa Goldenberg cannot be supported. Had the appraisal been made at the time of the death of the testator, perhaps a deduction could have been made, but when it was made the life tenants were dead. Moreover this point was not made in the appeal to the surrogate. (*Matter of Davis*, 149 N. Y. 539.)

This brings up the last question — whether or not the values of the remainders are *res judicata*, or whether the sum presently to be distributed is to be the basis of the tax imposed. Inasmuch as it is the contention of the trustee that the estate passed to the sisters at the time of the death, and our conclusion is that such was the case, the tax should be fixed upon the value as of that date. It is not contended that the value then fixed was erroneous. It is merely contended that since that date the values have decreased.

The bequests given to various persons not in the one per cent class by subdivisions 2, 3, 4, 5, 9, 10 and 11 of paragraph 23 of the will are all subject to the five per cent tax. It appears that all of these estates thus given also vested at the death of the testator, and hence should be taxed at the valuation as of that date. The bequests in subdivisions 13, 14 and 15 are exempt from taxation.

It is also contended that the order appealed from is erroneous for the reason that it directs the *executor* to pay the tax, whereas the estate is being administered by a trustee. This court has power to correct this error without sending the matter back to the appraiser, but as it must be sent back to have the tax fixed at the proper rates, this is not important.

The will directs (¶ 24) that the transfer tax be paid out of the estate by the executor or trustee, so that it is not necessary to apportion the tax among the legatees.

The value of the remainder interest having been in the original appraisal correctly appraised as of the time of the death of the testator, and the value of the legacies to the sisters at that time being clearly ascertainable, it is merely necessary to fix the tax thereon at the rate of one per cent, after deducting the value of the realty, which was not taxable under the law in effect at that time, and then fix a tax at the rate of five per cent on the balance, real and personal, payable to the other legatees.

The order should be reversed, with ten dollars costs and disbursements, and the proceeding remitted to the Surrogate's Court to fix the tax in accordance herewith.

Clarke, P. J., Laughlin and Merrell, JJ., concurred; Smith, J., concurred in result.

Order reversed, with ten dollars costs and disbursements, and proceeding remitted to the Surrogate's Court for further action in accordance with opinion.